## MULLINS v. COMMONWEALTH.

Court of Appeals of Kentucky.

June 25, 1954.

William J. Weaver, London, for appellant.

J. D. Buckman, Jr., Atty. Gen., Zeb. A. Stewart, Asst. Atty. Gen., for appellee.

CULLEN, Commissioner.

Upon trial under an indictment for murder, Edgar Mullins was found guilty of voluntary manslaughter and was sentenced to eight years' imprisonment in the penitentiary. Upon this appeal he contends: (1) He was entitled to a directed verdict; (2) there was error in the instructions; (3) incompetent evidence was admitted; and (4) the court erred in refusing to permit the jury to view the scene of the killing. We will briefly review the evidence.

Mrs. Lucille Johnson, while walking up the driveway of her farm home about one and one-half miles south of London, Kentucky, some time between 3:30 and 4:00 p. m. on January 12, 1953, was struck in the back by a .22 rifle bullet, which passed through her body and lodged in her heart, causing her almost immediate death. Her body was discovered lying in the driveway some 100 or 125 feet from the highway, by a garage employe who drove into the driveway, around 4:00 p. m., for the purpose of turning his car around after having completed the changing of a tire on another car which was stopped some 50 yards away from the driveway. Neither the garage employe nor the occupants of the car with the flat tire had heard any shot, nor had they seen Mrs. Johnson walking up the driveway. A neighbor women, who was in her house a short distance north of the Johnson home, heard a shot around 4:00 p. m., but upon looking in the direction from which she thought the sound had come she did not see any one with a gun. She did see a car parked along the side of the highway, which presumably was the car with the flat tire. Her house is located about 75 feet from the highway, and she said the shot sounded as though it had come from a point near a sign at the edge of some woods across the highway, some 150 or 160 feet from her house.

Mrs. Johnson had arrived at the foot of the driveway, in the family automobile, around 3:30 p. m. Her husband was standing there, having been brought home a few minutes before by a school bus. After talking for a few minutes, Mr. Johnson took the car to go to town, leaving his wife to walk up the driveway to the house. As he drove away, he noticed Edgar Mullins, with a gun and a paper sack, walking along a creek bank across the highway, some 300 to 330 feet away.

By reason of his having been seen in the vicinity near the time of Mrs. Johnson's death, Edgar Mullins was apprehended and questioned. At first he said that he had been in the vicinity of the Johnson home only on the morning of January 12, and denied that he had been there that afternoon. He also denied having a gun, claiming that he had sold his gun the previous Monday. Later, however, he admitted that he had been running a trap line on the afternoon in question, and had with him a sack of bait and a .22 rifle. He said that near the end of his trap line he ran out of bait, and decided to shoot a bird to secure some more bait. He raised his rifle and shot at a bird and immediately heard some one "holler". The sound seemed to come from across the highway. He saw some one on the Johnson's driveway in light colored clothing whom he took to be a woman, but he didn't know for sure. He stayed where he was for a minute and thinking he must have hit some one, he became frightened and hid his gun under some leaves and went on home. He wasn't sure the bullet had hit any one, and he didn't go to the police because of that fact and because he was frightened. He later went with the police to the place where he had hid the gun and pointed out to them the spot where he said he was standing when the shot was fired, which was in a wooded area some 900 feet from the point where Mrs. Johnson's body was found. His testimony on the trial was to the same effect as his final statement to the police.

A ballistics expert testified that the bullet found in Mrs. Johnson's body was fired from Mullins' rifle.

There was no evidence even remotely suggesting a motive for Mullins to shoot Mrs. Johnson deliberately. Mr. Johnson was well acquainted with Mullins and he testified that there had never been any

trouble between them. It appears that Mullins did not even know Mrs. Johnson.

█ It is our opinion that the evidence was sufficient to sustain a conviction of voluntary manslaughter, based on the reckless and wanton shooting of a firearm with felonious disregard for the safety of human life. Although Mullins placed himself in a wooded area some 900 feet from Mrs. Johnson, the testimony of Mr. Johnson and the neighbor woman was such as to justify a conclusion that Mullins was considerably closer than that, and not within the wooded area. The highway across which he shot was a federal highway, quite heavily traveled, and Mullins knew of the existence of the dwellings across the highway. Under these circumstances, a jury would be entitled to find that the shooting of the rifle showed reckless and wanton disregard of human life.

Although we believe the evidence was sufficient to sustain the conviction of voluntary manslaughter, it is our opinion that the instructions were so erroneous as to require the granting of a new trial. The court instructed on murder, voluntary manslaughter and involuntary manslaughter. The voluntary manslaughter instruction was double-barreled, authorizing a conviction if the jury believed that the shooting was done in sudden heat and passion or in sudden affray, or if the jury believed that the death of Mrs. Johnson was the result of reckless, wanton or grossly careless use of the gun by the defendant. The involuntary manslaughter instruction also was double-barreled, authorizing a conviction either on the theory of an assault without intent to kill or on the theory of careless use of the gun by the defendant in the performance of an unlawful act or in the performance of a lawful act in an unlawful manner.

█ It was error for the court to instruct on shooting in sudden heat and passion or in sudden affray, and to instruct on the theory of an assault without intent to kill, because there was no evidence to warrant either instruction. Vires v. Commonwealth, 308 Ky. 707, 215 S.W.2d 837. Since the erroneous instruction on sudden heat and passion or sudden affray was combined with the instruction on reckless or wanton shooting, it is impossible to determine under which part of the instruction the jury found the defendant guilty. The error in the instructions therefore must be considered prejudicial.

█ Under the evidence the defendant could be found guilty only of one of two offenses, namely, voluntary manslaughter based upon reckless or wanton use of a firearm, or involuntary manslaughter based upon careless or negligent use of a firearm. Vires v. Commonwealth, 308 Ky. 707, 215 S.W.2d 837; Childers v. Commonwealth, Ky., 239 S.W.2d 255. If the evidence is the same upon another trial, the instructions should be confined to these two offenses, eliminating the instructions on murder, and upon other theories of voluntary or involuntary manslaughter.

█ A further error in the instructions, which we trust will not occur upon another trial, is that one of the instructions was so phrased as to assume that Mrs. Johnson was killed by the defendant, rather than requiring the jury to so find.

█ We find no merit in the appellant's contention that the police officers should have been required to produce in evidence certain written statements taken by them from the defendant before the trial, rather than being permitted to testify orally as to what the statements were. Nor do we think any admonishment was required as to admissibility for a limited purpose only, of the testimony of the officers that Mullins told them he had sold his rifle and had hid his ammunition beneath the floor of his house.

█ It is our opinion that the court did not abuse its discretion in overruling a joint motion by the defendant and the Commonwealth for a view of the premises by the jury. From the written transcript we have

been able to get quite a clear picture of the scene of the shooting, and we think the jury was perfectly able to visualize the scene without actually viewing it.

The judgment is reversed, with directions to grant a new trial.