**COMMONWEALTH of Kentucky, Appellant,**

v.

**David PETREY, Appellee.**

**Nos. 95–SC–946–DG, 96–SC–392–DG.**

Supreme Court of Kentucky.

Feb. 27, 1997.

As Modified April 24, 1997.

Rehearing Denied June 19, 1997.

A.B. Chandler, III, Attorney General, Todd D. Ferguson, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, for Appellant.

Gail Robinson, McNally & Robinson, Frankfort, for Appellee.

LAMBERT, Justice.

Upon a jury verdict, appellee was convicted in the Kenton County Circuit Court of rape in the first degree and sentenced to fourteen (14) years in prison. In the Court of Appeals, his conviction was reversed based solely upon his unpreserved argument that the introduction of DNA evidence resulted in manifest injustice. The Commonwealth sought discretionary review and its motion was granted.

Appellee was convicted of raping C.B., who was appellee's son's nineteen (19) year old, live-in girlfriend. The victim testified that on the evening of November 8, 1992, appellee came to the apartment where she and her boyfriend lived to help her move some furniture. She further testified that after the furniture was moved, appellee began to try and touch her, wrestled her to the floor at one point, and ultimately raped her.

Neighbors, Beverly V. Hummel and Dan Hummel, testified for the Commonwealth that they heard screams from the victim's apartment that evening. Mrs. Hummel went across the hall to check on C.B., asking to borrow potatoes as an excuse. Mrs. Hummel testified that C.B. came to the door and whispered that she needed to talk to her. After appellee left the apartment, C.B. went across the hall to the Hummels' apartment and told them that appellee had raped her.

Appellee testified that he had never had sexual intercourse with C.B. and that the allegations were nothing more than a scheme between his son and C.B. to get back at appellee for asking them to move out of his house. Appellee also presented witnesses to attest that he and his son had not gotten along in the past.

There was persuasive testimony from the Commonwealth's witness, Stacey Warnecke of the Kentucky State Police Crime Lab. She testified as to DNA tests she had performed on swabs obtained from C.B. during the administration of a rape kit, and from semen samples taken from C.B.'s clothes. Ms. Warnecke testified that the DNA samples she had tested matched the DNA samples taken from appellee in three out of four points along the DNA strand. Ms. Warnecke testified that the fourth point along the DNA strand was inconclusive.

It is this critical testimony that Appellee first questioned in the Court of Appeals. In that court, appellee contended that the Commonwealth's DNA witness was never qualified as an expert, that she never established the scientific acceptance of the tests she performed, and that she never testified as to the acceptance of DNA analysis in the general scientific community. However, appellee did not object to any of this testimony. Quite to the contrary, appellee was the first party to bring up the possibility of DNA evidence by mentioning it during voir dire. Also, on cross-examination, Appellee's counsel stated to Ms. Warnecke, "I believe you have been challenged on your qualifications, but the court has accepted you as an expert witness

and you've gone on and expostulated on your expertise." Ms. Warnecke agreed with counsel that she had been qualified as an expert.

It appears from the record that appellee's strategy was to adopt a position that the DNA evidence would not harm his case and to openly address the DNA findings in an attempt to minimize their impact on the jury. Of course, appellee had an opportunity to cross-examine Ms. Warnecke to expose any imperfections or flaws in her technique or methods. In closing argument, appellee pointed out that the DNA evidence was not conclusive and that it was used mainly to exclude rather than include persons in the realm of possible or potential perpetrators. Counsel stated, "DNA excludes people, it does not mean it was the actual person, it is an inconclusive finding. Some of the tests were conclusive, some were inconclusive."

■ Our most recent treatment of DNA admissibility was in the case of *Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100 (1995). Adhering to our decision in *Harris v. Commonwealth*, Ky., 846 S.W.2d 678 (1992), we continued our reluctance to accept DNA evidence per se and followed the view that it should be dealt with on a case by case basis. However, our cautious approach to DNA evidence does not eliminate the duty of a party against whom such evidence is offered to object to the introduction and request a pretrial hearing, and thus give the trial judge an opportunity to determine whether the evidence should or should not be admitted. It has long been the law of this Commonwealth that an error will not be reviewed on appeal if the trial court has not had an opportunity to rule on the objection. RCr 9.22 and KRE 103(a)(1). In this case, appellee waived his right to object by failing to interpose a timely objection to the qualifications, testimony, procedures, or findings offered by Ms. Warnecke. KRE 103(a)(1); *Town of Slidell v. Temple*, 155 So.2d 681 (La.App. 1st Cir.1963). Due to lack of preservation, but discerning no error rising to the level of RCr 10.26, appellee's claim should not have been considered on appeal. The Court of Appeals was in error.

■ The Commonwealth, appellant herein, raises another issue on appeal: that the Court of Appeals erred in holding it to be reversible error for the trial court to admit DNA evidence based solely on the testimony of the Commonwealth's own witness. For its view, the Court of Appeals relied on *Harris v. Commonwealth*, Ky., 846 S.W.2d 678 (1993). The Commonwealth correctly points out that under the interpretation given by the Court of Appeals, the Commonwealth could never alone meet the standard for the admission of DNA evidence no matter how many witnesses it presented. The only way such a standard could be met would be for the trial court or the opposing party to call an expert witness to verify the testimony of the Commonwealth's expert.

■ What was intended in *Harris* was that the Commonwealth's witness can, by himself or herself, meet the standard for the admission of DNA evidence in that case. What the Commonwealth's expert cannot do alone is provide a sufficient basis for this Court to conclusively accept a new form of scientific evidence as a general principle. That must await another day.

Appellee raises two issues through a cross-appeal (1) prosecutorial misconduct in misleading comments concerning DNA evidence and (2) entitlement to jury instructions on first degree sexual abuse and sexual misconduct.

Appellee's claim of entitlement to an instruction on the offenses of sexual abuse and sexual misconduct is without merit due to lack of evidence to support either such instruction. *See, Billings v. Commonwealth*, Ky., 843 S.W.2d 890 (1992) and *Yarnell v. Commonwealth*, Ky., 833 S.W.2d 834 (1992).

■ Appellee's claim of prosecutorial misconduct during the closing argument was somewhat preserved for review, but is nevertheless without merit. The standard of review of alleged prosecutorial misconduct concerns "the overall fairness of the trial, and not the culpability of the prosecutor." *Slaughter v. Commonwealth*, Ky., 744 S.W.2d 407, 412 (1988) *quoting Smith v. Phillips*, 455 U.S. 209, 102 S.Ct. 940, 71 L.Ed.2d 78 (1982). Appellee argues that during the Commonwealth's closing, the prosecutor misled the

jury into believing that Ms. Warnecke testified that appellee was the perpetrator of the rape. What the prosecutor said during summation was that "it all came down to the DNA in the semen that was found in C.B.'s vagina matched the DNA of Mr. Petrey. No two are alike except identical twins and he ain't got one. It can't be David's,[1] it can't be anybody's. It's his. Match." Appellee objected at this point and stated, "I don't believe that is what the witness testified to, but I'll leave it up to the jury to make that determination."

Even though appellee's counsel used the word "objection," his comment was ambivalent and contained no request for relief. He virtually overruled his own objection. We doubt seriously whether such an objection satisfies the requirements of RCr 9.22 which imposes upon a party an obligation to make known to the court the action which he desires the Court to take.

In any event, however, the prosecutorial excess, if any there was, was non-prejudicial. Counsel is allowed considerable latitude during summation and except in extraordinary circumstances, a proper ruling is merely to remind the jury that argument of counsel is not evidence and the jury is charged with the duty to recall the evidence.

For the foregoing reasons we reverse the Court of Appeals and reinstate the final judgment of the Kenton Circuit Court.

STEPHENS, C.J., and COOPER, GRAVES, JOHNSTONE, LAMBERT, STUMBO and WINTERSHEIMER, JJ., concur.

---

**1.** The prosecutor intended to say "[i]t can't be Chris's" because he gestured in the direction of where Chris Petrey, appellee's son, sat in the courtroom.