Ralph SHOLLER, Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

No. 96–SC–856–MR.

Supreme Court of Kentucky.

June 18, 1998.

Deanna L. Dennison, Dennison & Associates, Covington, for appellant.

A.B. Chandler, III, Attorney General, Frankfort, Amy F. Howard, Office of Attorney General, Criminal Appellate Division, Frankfort, for appellee.

COOPER, Justice.

Appellant was convicted in the Kenton Circuit Court of two counts of robbery in the first degree, two counts of rape in the first degree, two counts of sodomy in the first degree, one count of burglary in the first degree, and of being a persistent felony offender in the first degree. The jury fixed his penalties at twenty years on each of the eight class B felonies, enhanced to life imprisonment on the conviction of PFO in the first degree. He appeals to this Court as a matter of right. Ky. Const. § 110(2)(b).

The two victims, D.B., a male, and K.B., a female, were employed at a tavern in Covington, Kentucky. After closing the tavern for the night on November 5, 1996, they were accosted in the parking lot by a man wearing a camouflage jacket over a red-hooded sweatshirt and holding a "pointy" object in his hand. The man informed them that he had a .38 caliber gun and threatened to shoot them if they did not give him their money. The victims testified that they were in fear for their lives and that they gave him all of their money. In doing so, K.B. dropped some of her money on the ground. The man then

ordered the victims to unlock the tavern and accompany him inside. He again threatened to kill them if they did not comply. Once inside, the man demanded the money from the cash register. The victims showed him that the cash register was empty and told him that the money was kept in a safe, which was locked. The perpetrator again threatened to kill them if they did not get the money for him. K.B. suggested that he could take the safe with him and leave in her automobile. The victims then carried the safe outside and placed it in the trunk of K.B.'s automobile. To make room for the safe, a bag of groceries was removed from the trunk and placed on the ground. The perpetrator was given the keys to the automobile.

The victims were then ordered back into the tavern and into a bathroom, where the perpetrator ordered K.B. to disrobe. After she complied, the perpetrator ordered her out of the bathroom and onto a mat, where he subjected her to two acts of forcible rape and three acts of forcible sodomy. Ultimately, he ejaculated on her face. He then allowed her to obtain some paper towels, which she used both to wipe her face and to wipe the perpetrator. The perpetrator then locked K.B. in the basement, told D.B. to stay in the bathroom, and left the tavern. D.B. testified that upon hearing the door close, he came out of the bathroom and observed through the back window that a police cruiser was in the parking lot and that a police officer was talking to the same man who had just committed the criminal acts against him and K.B.

Outside, Officer Wietholter of the Covington Police Department had stopped Appellant to investigate whether a red sweatshirt he was wearing might be the same one stolen from a car earlier that evening. Appellant denied involvement in the break-in of a car. However, Officer Wietholter noticed that Appellant was fidgeting. He also noticed some money laying on the ground and a bag of groceries sitting behind the vehicle adjacent to where Appellant was standing. A pat-down search revealed Appellant to be in possession of burglary tools and the keys to K.B.'s automobile. He was placed under arrest. Other officers arrived on the scene and D.B. identified Appellant to them as the perpetrator of the robberies. K.B. was taken to St. Luke Hospital where semen samples were removed from her thigh and her eyebrow. At trial, both victims identified Appellant as the perpetrator of the criminal acts committed against them.

## I. JURY ISSUES.

Appellant asserts error in the failure of the trial judge to strike two potential jurors for cause.

■ A. Juror No. 12 was a retired Secret Service agent, who was presently employed at St. Elizabeth Hospital, where he was acquainted with a nurse who would be a witness in the case. When questioned by the Commonwealth's attorney, Juror No. 12 stated that his law enforcement background would not present a problem with respect to his sitting as a juror in the case. He described himself as very open-minded and stated that his verdict would be based strictly on the evidence. On questioning by defense counsel, Juror No. 12 admitted that he was very pro-law enforcement and that he placed substantial credence in police officers. When asked if he thought all law enforcement officers told the truth, he replied, "I don't know, I think so, yeah, I've never experienced one who lied in court." With respect to his acquaintance with the witness, Juror No. 12 advised, "I work part-time at St. E.'s South and I know this Shelly Willington, is it? Strictly through the job, she's a paramedic."

■ "A determination as to whether to exclude a juror for cause lies within the sound discretion of the trial court, and unless the action of the trial court is an abuse of discretion or is clearly erroneous, an appellate court will not reverse the trial court's determination." *Commonwealth v. Lewis,* Ky., 903 S.W.2d 524, 527 (1995). A potential juror should be excused for cause only when the juror cannot conform his views to the requirements of law and render a fair and impartial verdict. *Mabe v. Commonwealth,* Ky., 884 S.W.2d 668 (1994). We have held that police officers are not disqualified to serve as jurors in criminal cases. *Sanders v.*

*Commonwealth*, Ky., 801 S.W.2d 665 (1990), *cert. denied*, 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991). Although indicating he would tend to give credence to the testimony of a police officer, Juror No. 12 did not indicate a bias against defendants. (We note in passing that the testimony of the police officers played only a lesser role in the prosecution's case, which was focused primarily upon the victims' eyewitness testimony and identification of Appellant as the perpetrator of the crimes.)

As for Juror No. 12's acquaintance with a peripheral witness, we have held that a mere work relationship is insufficient to establish bias on a challenge for cause. *Copley v. Commonwealth*, Ky., 854 S.W.2d 748 (1993); *Dunbar v. Commonwealth*, Ky., 809 S.W.2d 852 (1991). The trial judge did not err in overruling Appellant's motion to excuse Juror No. 12 for cause.

■ B. Juror No. 28 knew the Commonwealth's attorney socially through mutual friends and their mutual membership in a large card club. The juror testified that she and the Commonwealth's attorney might play cards together on an average of once per year. She stated that her relationship with the prosecutor was not such as to make it difficult for her to serve as a juror in this case, and that it would not make her uncomfortable to render a verdict against his position in this case.

■ Bias is implied from any close relationship, familial, financial or situational, with any party, counsel, victim, or witness, *Ward v. Commonwealth*, Ky., 695 S.W.2d 404 (1985), which, though not so close as to cause automatic disqualification, nevertheless transgresses the concept of a fair and impartial jury. *Montgomery v. Commonwealth*, Ky., 819 S.W.2d 713 (1991); *Marsch v. Commonwealth*, Ky., 743 S.W.2d 830 (1987). This definition does not encompass a mere social acquaintanceship in the absence of other indicia of a relationship so close as to indicate the probability of partiality. For example, in a medical malpractice action, we declined to imply bias in favor of a doctor by his former patient. *Altman v. Allen*, Ky., 850 S.W.2d 44 (1992). In a criminal case, no implied bias was found on the part of jurors with a pass-ing acquaintance of the victim, *Sanders v. Commonwealth*, *supra*, or who knew the defendant, *Key v. Commonwealth*, Ky.App., 840 S.W.2d 827 (1992), or who were fellow employees of the victim, *Copley v. Commonwealth*, *supra*. The trial judge did not abuse his discretion in overruling the motion to strike Juror No. 28 for cause.

## II. DNA EXPERT.

■ Stacey Warnecke, a forensic scientist specializing in DNA testing, first testified that DNA testing satisfied the foundation requirements of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), as adopted in *Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100 (1995). She then testified that she determined from tests of the semen samples removed from K.B.'s eyebrow and thigh and of a blood sample obtained from Appellant that four of the five DNA strands of the semen samples matched those of Appellant's blood sample. She also testified that a "match" does not mean that Appellant must have been the source of the semen samples, but only that Appellant was not excluded as the source. If there had not been a "match," Appellant would have been excluded as the source.

Appellant claims Warnecke's testimony should have been suppressed in the absence of accompanying testimony from a population geneticist as to the statistical probabilities associated with a genetic "match." Of course, we do not know what that testimony would have been; but, based upon a reading of other cases, a population geneticist presumably would have testified that the probabilities of a DNA match between unrelated individuals would be, *e.g.*, ten to one, or ten million to one, or some other mathematical probability. *See United States v. Bonds*, 12 F.3d 540, 550 (6th Cir.1993), *aff'g United States v. Yee*, 134 F.R.D. 161 (N.D.Ohio 1991); *Harris v. Commonwealth*, Ky., 846 S.W.2d 678, 679 (1992), *overruled on other grounds, Mitchell v. Commonwealth*, Ky., 908 S.W.2d 100 (1995). Warnecke admitted that she was not qualified to testify to mathematical probabilities, but only to the fact that her testing did not exclude Appellant as a

possible source of the semen samples obtained from K.B.'s body.

Appellant notes that the Supreme Judicial Court of Massachusetts has held that testimony of a genetic "match" cannot be introduced in the absence of proof of the significance of that conclusion. *Commonwealth v. Lanigan*, 413 Mass. 154, 596 N.E.2d 311 (1992); *Commonwealth v. Curnin*, 409 Mass. 218, 565 N.E.2d 440 (1991). However, there is no consensus on this issue. Some jurisdictions hold that evidence of mathematical probabilities based on DNA testing is inadmissible because of its prejudicial effect. *E.g., State v. Pennell*, 584 A.2d 513, 519–20 (Del.Super.Ct.1989); *State v. Schwartz*, 447 N.W.2d 422 (Minn.1989). "There is a real danger that the jury will use the evidence as a measure of the probability of the defendant's guilt or innocence ..." *Id.*, 447 N.W.2d at 428. In other jurisdictions, admissibility has been held to depend upon the degree of deviation in the database used to determine the mathematical probabilities. *Compare Caldwell v. State*, 260 Ga. 278, 393 S.E.2d 436 (1990) and *Commonwealth v. Curnin, supra*, with *People v. Axell*, 1 Cal. Rptr.2d 411 (Cal.Ct.App.1991) and *People v. Castro*, 144 Misc.2d 956, 545 N.Y.S.2d 985 (N.Y.Sup.Ct.1989). Still other jurisdictions hold that such evidence is admissible and the weight to be given to it is to be determined by the jury. *United States v. Bonds, supra; United States v. Gwaltney*, 790 F.2d 1378 (9th Cir.1986), *cert. denied*, 479 U.S. 1104, 107 S.Ct. 1337, 94 L.Ed.2d 187 (1987); *Snowden v. State*, 574 So.2d 960, 966 (Ala.Crim. App.1990); *Hopkins v. State*, 579 N.E.2d 1297 (Ind.1991).

The Commonwealth claims that we resolved this issue when we held in *Commonwealth v. Petrey*, Ky., 945 S.W.2d 417 (1997) that two witnesses are not required to satisfy the standard for admission of DNA evidence. *Id.* at 419. Actually, the issue addressed in *Petrey* was not whether DNA tests were admissible without concomitant evidence of statistical probabilities, but whether the Commonwealth's expert could testify to both the DNA test results and the foundation evidence required by *Daubert v. Merrell Dow Pharmaceuticals, Inc., supra*, and *Mitchell v. Commonwealth, supra*. The issue raised by Appellant in this case is one of first impression in this Commonwealth.

In fact, Warnecke's testimony did include an explanation of the significance of a DNA match, albeit to the limited extent that the results did not prove that Appellant was the source of the semen, but only that he could not be excluded as a possible source. We view Warnecke's testimony as similar to that of an expert who testifies that a defendant's blood type is the same as that of a blood sample found at a crime scene. *E.g., Wilhite v. Commonwealth*, Ky., 574 S.W.2d 304, 306 (1978). Such does not mean that the crime scene blood was the defendant's blood, but only that the defendant is not excluded as the source of the crime scene blood. In that respect, the testimony is just another item of circumstantial evidence to be weighed by the jury.

To summarize, there was evidence that DNA testing is a recognized and accepted field of science and that Warnecke is an expert qualified to conduct such tests and report her results. The information she provided was both relevant and assisted the jury in determining whether Appellant could have been the perpetrator of these crimes. KRE 401; KRE 702. If Appellant desired additional evidence of statistical probabilities based on Warnecke's test results, he could have hired his own population geneticist to analyze the results and testify to those probabilities. There was no error in admitting the DNA test results with the accompanying explanation given by Warnecke.

### III. EYEWITNESS MISIDENTIFICATION EXPERT.

Appellant asserts the trial court erred by excluding the testimony of Solomon M. Fulero, a psychologist, who purportedly would have testified to factors which cause eyewitnesses to make inaccurate identifications. However, Fulero's proposed evidence was not offered by avowal; thus any possible error is not preserved for appellate review. KRE 103(a)(2); *Partin v. Commonwealth*, Ky., 918 S.W.2d 219 (1996).

## IV. CRIME SCENE VIEW.

Appellant asserts that the trial court erred by overruling his motion to permit the jury to view the crime scene at night so that they could determine for themselves whether the victims were able to make an accurate identification. The trial judge correctly observed that it would be impossible to recreate the exact lighting conditions existing at the crime scene on the night the crimes were committed. The victims testified to the lighting conditions both outside the tavern and in every area of the building in which they were accompanied by Appellant. Photographs taken inside the tavern on the night of the crimes were introduced. There was ample testimony that the outside crime scene was well lit. Officer Finan testified that there was a street light on the corner, that the tavern was "pretty well lit," and that lights were left on inside the tavern at night so that police officers could see if anything was happening inside. Officer Weitholter testified that the lighting conditions outside were sufficient for him to observe that Appellant was wearing a red sweatshirt. Both victims testified that the area of the crime scene was well lit, both inside and outside the tavern. Appellant did not testify and there was no evidence to the contrary. Thus, Appellant's argument that the lights in the tavern were not as bright as testified to by the eyewitnesses was pure speculation and could not have been proven by a view. The trial judge did not abuse his discretion in overruling Appellant's motion that the jury view the crime scene. KRS 29A.310(3); *Dawes v. Commonwealth*, Ky., 349 S.W.2d 191 (1960); *Mullins v. Commonwealth*, Ky., 269 S.W.2d 713 (1954).

## V. SELF–INCRIMINATION.

A defense witness testified on cross-examination that Appellant spoke with a lisp and was missing a front tooth, two facts which were not mentioned by the victims. The Commonwealth's attorney requested that Appellant show the jury his teeth. Appellant's objection to this procedure was overruled, and he claims on appeal that requiring him to display his teeth to the jury amounted to compulsory self-incrimination proscribed by the Fifth Amendment of the United States Constitution.

The privilege against self-incrimination extends only to evidence of a testimonial nature. *Newman v. Stinson*, Ky., 489 S.W.2d 826 (1972). It does not extend to demonstrative, physical or real evidence. Thus, in *United States v. Williams*, 704 F.2d 315 (6th Cir.1983), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983), it was held not to have been error to require the defendant to read to the jury a passage from *Time* magazine so that they could compare his voice to the description given by the prosecution witnesses. *See also Gilbert v. California*, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967) (handwriting exemplar); *United States v. Wade*, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) (voice exemplar); *Holt v. United States*, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021 (1910) (defendant compelled to wear particular clothing). Requiring Appellant to display his teeth to the jury did not violate the constitutional proscription against compulsory self-incrimination.

## VI. COMMENT ON SILENCE.

During direct examination by the prosecutor, Detective Cody Stanley testified that he responded to police headquarters to "hopefully get an interview with the suspect." He did not state whether he did or did not interview Appellant, who claims this remark was an indirect comment on his failure to testify.

There was no objection to this testimony; thus, it is not preserved for appellate review. RCr 9.22; *Commonwealth v. Preece*, Ky., 844 S.W.2d 385 (1992), *cert. denied*, 510 U.S. 816, 114 S.Ct. 66, 126 L.Ed.2d 36 (1993); *Pack v. Commonwealth*, Ky., 610 S.W.2d 594 (1980). Regardless, the test concerning indirect comments is whether the comment is reasonably certain to direct the jury's attention to the defendant's exercise of his right to remain silent. *Tinsley v. Commonwealth*, Ky., 495 S.W.2d 776, 782 (1973), *cert. denied*, 414 U.S. 1077, 94 S.Ct. 595, 38 L.Ed.2d 484 (1973); *Neal v. Commonwealth*, Ky., 302 S.W.2d 573 (1957). In *Gall v. Commonwealth*, Ky., 607 S.W.2d 97 (1980), *cert. denied*, 450 U.S. 989, 101 S.Ct. 1529, 67

L.Ed.2d 824 (1981), a police officer testified that he tried to talk to the defendant, but "he wouldn't talk." We held that this comment was not likely to draw the jury's attention to the defendant's silence. *Id.* at 111. The comment made by Detective Stanley in this case was even less likely to do so.

### VII. CUMULATIVE ERROR.

Appellant claims reversal is required because of "cumulative error." Since we find no error occurred in Appellant's trial, there could have been no cumulative error. *Compare Funk v. Commonwealth,* Ky., 842 S.W.2d 476 (1993).

For the reasons stated in this Opinion, the judgments of conviction and sentences imposed by the Kenton Circuit Court are AFFIRMED.

All concur.