RENDERED: APRIL 4, 2025; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2024-CA-0157-MR

CORNELIUS A. GIVENS          APPELLANT

v.         APPEAL FROM PERRY CIRCUIT COURT
HONORABLE ALISON C. WELLS, JUDGE
ACTION NO. 22-CR-00237

COMMONWEALTH OF KENTUCKY          APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE: THOMPSON, CHIEF JUDGE; CALDWELL AND L. JONES, JUDGES.

JONES, L., JUDGE: Cornelius Givens appeals from a judgment sentencing him to ten years' imprisonment after a jury found him guilty of burglary in the second degree and terroristic threatening in the third degree. We affirm.

# I. **RELEVANT FACTUAL AND PROCEDURAL HISTORY**

The relevant facts appear to be uncontested. Givens, who resided in Ohio, once had a dating relationship with Christine Warfield, who resided in Perry County, Kentucky. According to Warfield, that relationship ended sometime around March 2022. Around two months later, Warfield had a get-together at her home. After Warfield and her boyfriend went to bed, they were awakened by Givens throwing two bricks through Warfield's bedroom window.

Warfield's security camera footage, which was played at trial, shows Givens attempting to enter Warfield's home through the broken window. Givens got most of his body inside Warfield's home before retreating after Warfield's boyfriend threw a punch towards him. The camera's audio feed captured Givens stating he would kill Warfield.

Givens was charged with burglary in the second degree and terroristic threatening in the third degree. An assault charge was later dismissed. Under Kentucky Revised Statutes (KRS) 511.030(1) "[a] person is guilty of burglary in the second degree when, with the intent to commit a crime, he or she knowingly enters or remains unlawfully in a dwelling." The basis for the misdemeanor terroristic threatening charge was Givens' threat to kill Warfield. *See* KRS 508.080(1)(a) (providing that a person commits terroristic threatening in the third

degree if he or she "threatens to commit any crime likely to result in death or serious physical injury to another person . . . .").

In April 2023, the Commonwealth submitted a one-page notice, which contained no specifics, pursuant to Kentucky Rule of Evidence (KRE) 404 of its intent to introduce evidence of other crimes, wrongs, or acts committed by Givens.[1] In early October 2023, the Commonwealth submitted a second KRE 404 notice which listed three prior bad acts allegedly committed by Givens against

---

[1] KRE 404 provides in relevant part as follows:

> (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible:
>
> > (1) If offered for some other purpose, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident; or
> >
> > (2) If so inextricably intertwined with other evidence essential to the case that separation of the two (2) could not be accomplished without serious adverse effect on the offering party.
>
> (c) Notice requirement. In a criminal case, if the prosecution intends to introduce evidence pursuant to subdivision (b) of this rule as a part of its case in chief, it shall give reasonable pretrial notice to the defendant of its intention to offer such evidence. Upon failure of the prosecution to give such notice the court may exclude the evidence offered under subdivision (b) or for good cause shown may excuse the failure to give such notice and grant the defendant a continuance or such other remedy as is necessary to avoid unfair prejudice caused by such failure.

Warfield it intended to introduce at trial – two instances of Givens' having choked her and one instance of Givens' having attempted to kidnap her.

A one-day trial on the charges against Givens began about a week after the Commonwealth submitted its second KRE 404(b) notice. Right before jury selection began, the court held a hearing on Givens' objection to the Commonwealth's intent to introduce the KRE 404(b) evidence.

At the hearing, the Commonwealth asserted the prior bad acts evidence was relevant to show Givens had intended to commit a crime – a homicide – upon entering Warfield's home. The Commonwealth said Givens' intent would be a key issue in the trial. Givens argued that the probative value of the KRE 404(b) evidence was greatly outweighed by the prejudice admitting it would cause him. The trial court ruled in favor of the Commonwealth.

During *voir dire*, the trial court asked the prospective jurors if they had "any" relationship with the Commonwealth Attorney. Juror 438 answered affirmatively. Though the elected Commonwealth Attorney was apparently present in the courtroom, he was not the trial attorney for Givens' trial. At an ensuing bench conference, the juror stated that she had gone to school with the Commonwealth Attorney and had known him her whole life. She later stated she had known him for forty-five to fifty years. The juror said that if she saw the

Commonwealth Attorney at the grocery store, she would ask how his mother was doing.

However, Juror 438 described the relationship as not being close and the two did not "hang out" together. The juror stated she would be guided by the evidence presented at trial and was not likely to believe the Commonwealth's evidence more than that offered by the defense. The trial court denied Givens' motion to strike Juror 438 for cause. Givens used a peremptory strike on Juror 438 and informed the court of another juror for which he would have used a peremptory strike if the court had granted his motion to strike Juror 438 for cause.

The Commonwealth asked Warfield if she had taken seriously Givens' threats to kill her during the broken window incident. She answered affirmatively, based on past experiences. The Commonwealth asked her about those experiences, which led to her recounting Givens' alleged prior bad acts.

Warfield described Givens' choking her because of his dissatisfaction with how she had hidden Christmas presents. That was one of the incidents listed in the Commonwealth's KRE 404(b) notice.

Warfield also described Givens' becoming upset when she stated she did not know how to work a television remote at the house he shared with his mother. Warfield testified that she had begun to cry, which further angered Givens because he thought Warfield's crying would awaken his mother. Warfield then

described Givens' dragging her by her hair to a different room, after which he choked her. Warfield testified that she knew she was going to die and it had hurt her to swallow for a time thereafter. She also described Givens having forced her toward her vehicle and striking her with her bag as she walked. The choking was listed in the Commonwealth's KRE 404(b) notice; Givens dragging Warfield by her hair and striking her with her bag were not.

Warfield testified that she eventually returned inside Givens' home after the choking and hair pulling incidents before leaving for her home the following morning. However, she testified that Givens appeared at her house soon after she arrived home. She described him then forcing her into a vehicle against her will to return to Ohio. That is the kidnapping mentioned in the KRE 404(b) notice.

Warfield often testified in a monologue-type manner, undisturbed by questions or objections, including describing other bad acts or threats against her by Givens not listed in the KRE 404(b) notice. She described having told her friend at one point that it would be because of Givens if she (Warfield) died or went missing. Warfield similarly testified that she knew she would not make it home alive if she went with Givens back to Ohio. She described Givens as "dangerous" and said he did not have a driver's license (but he had driven from Ohio to her house). Warfield testified that Givens had told her that he would have

-6-

his cousins beat her to death and had put his cousins on speakerphone whereupon they had said they would "take care of" her. She stated she knew Givens would kill her or have someone else kill her.

Givens did not object to the aforementioned testimony. Instead, Givens objected after Warfield testified that she had told her friend on the phone that everything was alright even though she believed Givens was going to kill her. Givens asserted that testimony was outside the scope of the Commonwealth's KRE 404(b) notice. Givens asked for a mistrial or to strike the testimony. The trial court denied Givens' requests. Instead, the court told the Commonwealth to stick to the events listed in the KRE 404(b) notice. Givens did not then seek additional relief, such as a jury admonition.

The jury found Givens guilty of burglary in the second degree and terroristic threatening in the third degree and recommended ten years' imprisonment for the burglary charge – the maximum sentence. *See* KRS 511.030(2) (providing that burglary in the second degree, under these facts, is a Class C felony); KRS 532.060(2)(c) (providing that the sentence for a Class C felony is five to ten years' imprisonment). The sentence for the misdemeanor terroristic threatening conviction did not add to Givens' ten-year burglary sentence. Givens filed this appeal after the trial court sentenced him in accordance with the jury's recommendations.

## II. <u>ANALYSIS</u>[2]

## A. DENIAL OF MOTION TO STRIKE JUROR 438

Givens argues the trial court should have stricken Juror 438 for cause due to the juror's "unusually close relationship to the Commonwealth's Attorney." Appellant's Opening Brief, p. 7. "Failing to remove a biased juror taints the entire trial" because it is a structural error. *Torrence v. Commonwealth*, 603 S.W.3d 214, 220 (Ky. 2020). A court should excuse a juror if the situation is a "close call or the issues could not be resolved with certainty . . . ." *Id.* at 221. We review a decision about whether to strike a juror for cause for abuse of discretion. *Id.* at 220.

Our Supreme Court has explained that:

> Under the Sixth and Fourteenth Amendments to the United States Constitution and Section 11 of the Kentucky Constitution, a criminal defendant is entitled to an impartial jury. To help protect that right, [Kentucky Rule of Criminal Procedure] RCr 9.36 mandates that "[w]hen there is reasonable ground to believe that a prospective juror cannot render a fair and impartial verdict on the evidence, that juror shall be excused as not qualified." In making this determination, the trial court is to consider the prospective juror's voir dire responses as well as his or her demeanor during the course of voir dire, and is to keep in mind that generally it is the totally [sic] of those circumstances and not the response to any single question that reveals impartiality or the lack of it. Impartiality . . . is not a technical question but a state of mind. Indeed, notwithstanding a prospective juror's

---

[2] "We have considered the parties' extensive arguments and citations to authority but will discuss only the arguments and cited authorities we deem most pertinent, the remainder being without merit, irrelevant, or redundant." *Schell v. Young*, 640 S.W.3d 24, 29 n.1 (Ky. App. 2021).

responses during voir dire, whatever his or her protestations of lack of bias, the juror's close relationship, be it familial, financial or situational, with any of the parties, counsel, victims or witnesses, is sufficient to require the court to sustain a challenge for cause and excuse the juror. This is so because however sincere and well-meaning such prospective jurors may be, such close personal relationships are apt subconsciously [to] affect their decision in the case.

*Brown v. Commonwealth*, 313 S.W.3d 577, 596 (Ky. 2010) (some quotation marks and citations omitted) (brackets in *Brown*).

However, a "mere social acquaintanceship" with an attorney is insufficient to conclude the juror has implied bias "in the absence of other indicia of a relationship so close as to indicate the probability of partiality." *Sholler v. Commonwealth*, 969 S.W.2d 706, 709 (Ky. 1998).

Juror 438 was a lifelong acquaintance of the Commonwealth Attorney as the two were schoolmates. Standing alone, that relationship does not show a "probability of partiality" such that the trial court abused its discretion by declining to strike the juror. *Id.* In an analogous situation, our Supreme Court declined to find inherent bias in a juror who sometimes played cards with the Commonwealth Attorney. *Id.* Here, there was familiarity borne of attending school together but there was no socialization between the juror and the Commonwealth Attorney. The fact that the juror exchanged bland social pleasantries with the Commonwealth

Attorney upon a happenstance meeting at a store, or referred to him by his first name, does not show they had a "close" relationship.

Juror 438's *voir dire* responses reinforce our conclusion. There is no magical question or response which can rehabilitate an inherently biased juror. *Sturgeon v. Commonwealth*, 521 S.W.3d 189, 196 (Ky. 2017). However, "[c]larifying questions may be used as needed to ascertain the juror's true attitude about subjects of potential bias." *Id.* at 194. Thus, "the trial court is to consider the prospective juror's voir dire responses as well as his or her demeanor during the course of voir dire, and is to keep in mind that generally it is the totally [sic] of those circumstances and not the response to any single question that reveals impartiality or the lack of it." *Brown*, 313 S.W.3d at 596. "Indeed, a juror may indicate that he or she can be impartial, but may demonstrate a state of mind to disprove that statement by subsequent comments or demeanor so substantially at odds that it is obvious the [trial court] has abused [its] discretion in deciding the juror is unbiased." *McDaniel v. Commonwealth*, 341 S.W.3d 89, 92-93 (Ky. 2011) (internal quotation marks and citation omitted) (brackets in *McDaniel*). Here, Juror 438 consistently stated her acquaintance with the Commonwealth Attorney would not sway how she viewed the evidence.

In sum, we are cognizant that "a potential juror's close relationship with the prosecutor trying the case is presumptively disqualifying." *Futrell v.*

*Commonwealth*, 471 S.W.3d 258, 274 (Ky. 2015). However, there was not a "close relationship" between Juror 438 and the Commonwealth Attorney. First, the juror was acquainted with the Commonwealth Attorney, not the assistant Commonwealth Attorney who tried charges against Givens. Second, and more importantly, Givens has not shown that Juror 438's relationship with the Commonwealth Attorney stemming from the two having attended school together – without socializing – was so "close" that the trial court abused its discretion by declining to strike Juror 438 for cause.

### B. ADMISSION OF PRIOR BAD ACTS

Givens asserts the trial court erred by allowing the Commonwealth to present evidence of his prior bad acts. As we perceive it, Givens' argument is twofold: first, the trial court erred by allowing the Commonwealth to present evidence of the three prior bad acts listed in the KRE 404(b) notice; second, the trial court erred by allowing Warfield to testify about other prior bad acts.

Before we may analyze the merits of Givens' claims, we must determine whether they are preserved for appellate review. Givens preserved the issue of the admissibility of the three acts listed in the Commonwealth's notice by objecting to the notice and asking the trial court to exclude that evidence. We review preserved evidentiary rulings under the abuse of discretion standard. *Johnson v. Commonwealth*, 694 S.W.3d 232, 241 (Ky. 2023).

However, Givens has not preserved the arguments in his brief regarding the vast majority of Warfield's discussion of additional prior bad acts. For example, Givens did not object to Warfield's testimony that Givens was dangerous, that she believed he would kill her, that he drove without a license, that he pulled her by her hair from room to room or that he struck her with her own bag. *See* KRE 103 (generally requiring an objection to preserve an alleged evidentiary error). We may only review unpreserved alleged errors under the palpable error standard. KRE 103(e); RCr 10.26; *Johnson*, 694 S.W.3d at 241.

The "threshold for palpable error is high . . . ." *Chavies v. Commonwealth*, 374 S.W.3d 313, 323 (Ky. 2012). To demonstrate palpable error, Givens "must show a probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* at 322-23. When making a palpable error determination, a court should consider "whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Wahl v. Commonwealth*, 636 S.W.3d 484, 501 (Ky. 2021) (internal quotation marks and citations omitted). A palpable error is a mistake "so egregious that it jumps off the page . . . and cries out for relief." *Chavies*, 374 S.W.3d at 323 (internal quotation marks and citation omitted).

### 1. The Prior Bad Acts Listed in the Pretrial Notice

Our Supreme Court has explained that:

> Generally, a defendant's prior bad acts are inadmissible because ultimate fairness mandates that an accused be tried only for the particular crime for which he is charged. An accused is entitled to be tried for one offense at a time, and evidence must be confined to that offense . . . . The rule is based on the fundamental demands of justice and fair play.
>
> We have construed KRE 404(b) as being exclusionary in nature since it is a well-known fundamental rule that evidence that a defendant on trial had committed other offenses is never admissible unless it comes within certain exceptions, which are well-defined in the rule . . . itself. For that reason, any exceptions to the general rule that evidence of prior bad acts is inadmissible should be closely watched and strictly enforced because of the dangerous quality and prejudicial consequences of this kind of evidence.

*Clark v. Commonwealth*, 223 S.W.3d 90, 96 (Ky. 2007) (internal quotation marks, footnotes, citations, and brackets omitted).

Making the "extremely difficult" determination of whether evidence is admissible under KRE 404(b) must be done on a case-by-case basis. *Leach v. Commonwealth*, 571 S.W.3d 550, 557 (Ky. 2019). A court considers "relevance, probativeness, and prejudice" when determining whether evidence is admissible under KRE 404(b). *Jenkins v. Commonwealth*, 496 S.W.3d 435, 457 (Ky. 2016).

When evaluating relevance, "the assessing court asks, is the evidence relevant for some purpose other than to prove the criminal disposition of the accused? Aside from showing criminal propensity, that is, the extrinsic act evidence must bear *materially* on an element of the offense or on some other fact

-13-

actually in dispute." *Jenkins*, 496 S.W.3d at 457 (emphasis in original) (internal quotation marks and citation omitted). Here, as the Commonwealth notes, intent to commit a crime after entering a dwelling unlawfully is an element of burglary in the second degree under KRS 511.030(1). Thus, evidence of the three violent prior bad acts purportedly committed by Givens is relevant because it shows he intended to commit a crime – killing Warfield – after unlawfully entering Warfield's home. Similarly, the three prior bad acts in the KRE 404(b) notice were relevant to help show Givens had "threaten[ed] to commit any crime likely to result in death or serious physical injury" to Warfield, as was required to prove Givens was guilty of terroristic threatening in the third degree. KRS 508.080(1)(a).

The three prior bad acts listed in the Commonwealth's pretrial notice involve alleged physical acts of violence by Givens against Warfield. Moreover, prior to trial, the Commonwealth stated a belief that Givens' intent to commit a crime after unlawfully entering Warfield's home would be a key issue in the trial.

Arguably, Givens did not end up vigorously contesting the intent issue at trial. Nonetheless, we conclude the evidence in the Commonwealth's notice was relevant, especially since the burden for establishing relevance is slight. *See, e.g.*, *Webb v. Commonwealth*, 387 S.W.3d 319, 325 (Ky. 2012).

Turning to probativeness, the fundamental question is: "could the jury reasonably infer that the prior bad acts occurred and that [the defendant]

-14-

committed such acts[?]" *Jenkins*, 496 S.W.3d at 457 (internal quotation marks and citations omitted) (brackets in *Jenkins*). Warfield's first-hand account of the three prior bad acts listed in the KRE 404(b) notice satisfies that standard, especially since "no contradictory evidence was presented at trial to lessen the probativeness of [Warfield's] testimony." *Leach*, 571 S.W.3d at 556.

"And finally, the court asks, is the extrinsic act evidence unduly prejudicial, that is, is the tendency of the evidence so strongly to lead the jury into improper character inferences that that tendency substantially outweigh[s] [the evidence's] probative value with regard to its proper uses?" *Jenkins*, 496 S.W.3d at 457 (internal quotation marks and citations omitted) (brackets in *Jenkins*).

Our Supreme Court has held that "a trial court should exclude evidence otherwise admissible under KRE 404(b) if its probative value is substantially outweighed by the danger of undue prejudice." *Newcomb v. Commonwealth*, 410 S.W.3d 63, 77 (Ky. 2013). To assess the probative value of evidence against the danger of undue prejudice, courts should consider:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Id.* at 77 (internal quotation marks and citation omitted). *See also Leach*, 571 S.W.3d at 554.

-15-

Introduction of evidence about the three specific prior bad acts at issue was undoubtedly prejudicial to Givens. Indeed, "[e]vidence of other bad acts is always prejudicial . . . . The rule is clear, however, that the probative value must be *substantially* outweighed by the prejudicial effect" to render the evidence inadmissible under KRE 404(b). *Leach*, 571 S.W.3d at 557.

The evidence against Givens was overwhelming. As the Commonwealth noted, the security camera footage essentially depicted Givens committing the offenses for which he was on trial. That cuts both ways in terms of the prior bad acts' admissibility. The Commonwealth did not have a great need for the prior bad acts evidence because the other evidence against Givens was incredibly strong. On the other hand, admission of the prior bad acts evidence was unlikely to materially impact the outcome of the trial since there was already compelling evidence of Givens' guilt.

As previously discussed, the prior bad acts did help underscore Warfield's belief that Givens was not making idle threats against her. Moreover, the three bad acts occurred relatively close in time to the acts which led to these charges. Finally, both the three prior bad acts and the charges against Givens involved [domestic violence] by Givens towards Warfield. Our Supreme Court has held that "[e]vidence of similar acts perpetrated against the same victim, we have noted many times, is almost always admissible, under KRE 404(b), because it

-16-

will almost always be significantly probative of a material issue aside from the defendant's character." *Jenkins*, 496 S.W.3d at 458. "This evidence serves to prove the defendant's intent, plan, or absence of mistake or accident." *Kimmel v. Commonwealth*, 671 S.W.3d 230, 243 (Ky. 2023) (internal quotation marks and citation omitted).

In short, though there are some factors which tend to favor Givens' argument, we conclude he has not shown that the prejudicial nature of the prior bad acts at issue *substantially* outweighed the evidence's probative value.

In sum, we discern no abuse of discretion in the trial court's decision to allow the Commonwealth to present evidence of the three prior bad acts listed in the KRE 404(b) notice.[3]

**2. Prior Bad Acts Testimony Not Listed in the KRE 404(b) Notice**

Warfield's testimony strayed beyond the confines of the Commonwealth's KRE 404(b) notice. In her narrative-type testimony she repeatedly made comments about her fears for her life and mentioned prior bad acts committed by Givens which while part of the same course of conduct as the

---

[3] Givens faults the trial court for not admonishing the jury as to how the evidence of prior bad acts may be used. *See, e.g.*, *Jenkins*, 496 S.W.3d at 459. But Givens has not preserved the issue by citing to where he asked the trial court for a limiting admonition, either after the court made its pretrial ruling that the prior bad acts would be admitted or at the conference between counsel and the court regarding jury instructions. Givens has not shown the lack of an admonition, under these facts, was a palpable error.

-17-

acts listed in the KRE 404(b) notice described above, were not themselves listed in the notice.

However, Givens failed to object until Warfield described Givens requiring her to call her friend and falsely state everything was alright even though she believed Givens would kill her. Therefore, Givens did not preserve any issues regarding Warfield's prior testimony about Givens' prior bad acts not listed in the KRE 404(b) notice. As such, we must analyze Warfield's testimony which occurred prior to the objection under the palpable error rubric.

The admissibility of many of Warfield's statements about Givens' prior bad acts and her belief Givens would kill her is debatable. Nonetheless, even if we were to assume solely for the sake of argument that the evidence was inadmissible, Givens is not entitled to palpable error relief.

The evidence against Givens was overwhelming – he was essentially depicted committing the crimes at issue on the security camera footage. Therefore, we cannot conclude Warfield's testimony about Givens' prior bad acts which were not listed in the KRE 404(b) notice was an egregious, trial altering palpable error. *See, e.g.*, *Sexton v. Commonwealth*, 647 S.W.3d 227, 232 (Ky. 2022) (holding that the admission of KRE 404(b) evidence was not a palpable error because of the overwhelming evidence against Sexton); *Ramsey v. Commonwealth*, 157 S.W.3d 194, 199 (Ky. 2005) (holding that the admission of KRE 404(b) evidence was not a

palpable error because the evidence of guilt was so overwhelming that Ramsey would have been found guilty if the evidence had not been admitted).

Finally, Givens preserved the issue regarding Warfield's testimony that, at Givens' direction, she told her friend that everything was alright even though she actually believed Givens would kill her. Again, however, even if we assume, solely for the sake of argument, that statement was inadmissible its admission would be a harmless error given the overwhelming evidence against Givens. Givens' argument that the trial court should have admonished the jury after sustaining his objection fails for similar reasons.

### III. **CONCLUSION**

Having considered the arguments or contentions of error made by the parties, those not discussed herein are found to be without merit, irrelevant, or redundant.

For the foregoing reasons, the Perry Circuit Court is affirmed.

ALL CONCUR.

BRIEFS FOR APPELLANT:

Timothy G. Arnold
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Joseph A. Beckett
Assistant Attorney General
Frankfort, Kentucky