COMMONWEALTH of Kentucky,
Appellant,

v.

Lorrie MITCHELL, Appellee.

No. 2003–SC–0927–DG.

Supreme Court of Kentucky.

June 16, 2005.

Gregory D. Stumbo, Attorney General of Kentucky, Dennis W. Shepherd, Assistant Attorney General, Criminal Appellate Division, Office of the Attorney General, Frankfort, Counsel for Appellant.

Joseph R. Lane, Ned Barry Pillersdorf, Pillersdorf, Derossett & Lane, Prestonsburg, Counsel for Appellee.

Opinion of the Court by Justice JOHNSTONE.

On February 15, 2001, Appellee, Lorrie Mitchell, sold six Oxycontin pills to police informant Kevin Bowling. Mitchell was thereafter indicted by a Floyd County Grand Jury on one count of first-degree trafficking in a controlled substance (Oxycontin). At trial, the Commonwealth played for the jury an audio recording of the undercover drug buy. In addition, Kentucky State Police Detective Randy Hunter, who was in charge of the investigation and who coordinated the undercover buy between Bowling and Mitchell, testified about the transaction, as well as about the effects of Oxycontin. The defense did not present any evidence, choosing instead to attack the quality of the audiotape and Bowling's credibility as a paid informant and former drug user. The jury returned a verdict of guilt and,

pursuant to an agreement with the Commonwealth, Mitchell was sentenced to seven and a half years' imprisonment.

The Court of Appeals reversed Mitchell's convictions and remanded the matter for a new trial. The three-judge panel found that the prosecutor's use of a "send a message" closing argument was improper, but unpreserved. The court declined to address the error under RCr 10.26, determining that other errors rendered the analysis unnecessary. Specifically, the court opined that Detective Hunter's testimony as to the effects of Oxycontin on the human body was of "questionable relevance" because its admission made it no more or less likely that Mitchell sold Oxycontin to an undercover informant. And even if the Commonwealth could demonstrate that the nature of Oxycontin was relevant, only a qualified toxicologist or other expert could provide such testimony. Finally, the court held that it was improper for Detective Hunter to testify about prior drug transactions between Mitchell and Bowling because there was no question raised as to why the investigation proceeded in the manner that it did. The Court of Appeals concluded that although none of the errors warranted reversal in and of themselves, their cumulative effect denied Mitchell a fair trial.

This Court thereafter granted the Commonwealth's motion for discretionary review. After hearing oral arguments and reviewing the record, we reverse the decision of Court of Appeals and reinstate the judgment and sentence of the Floyd Circuit Court. Additional facts are set forth as necessary.

## I. Commonwealth's Closing Argument

■ The Court of Appeals took issue with the following four paragraphs contained within the twenty-three pages of

the transcribed prosecutor's closing argument:

> Prescription drug problem is out of control. That's something everybody knows. It's a huge problem, and I've touched on that. It's ruined lives. It's torn apart families. Oxycontin in particular. Hillbilly Heroine, that's what CNN calls it. And the problem with these pills is, and we all know it, it goes to someone with a lawful prescription and that person turns around and sells it to someone else or gives them to someone else, and that person turns around and gives them to someone else or sells them to someone else, and that's how the problems start, and that's why the face of the drug dealers change so much. It's not like it used to be. You don't have the long-haired hippy guys with the marijuana anymore like back in the 60's or something like that. The access to it is so much easier. You can get them from the bathroom cabinet, trade them, sell them to someone else. That's how the faces of the drug dealers change.
>
> Now here's something else real significant I think. Detective Hunter said that the Defendant has never had a prescription for Oxycontin. But she had it, didn't she? She obviously had it, she knew where to get it, she had it on her and she sold it as well. She sold it to somebody without a prescription. That's the problem. Is that dangerous? You bet. You also hear on the tape, near the end of the tape, that she even says she knows of a girl up around Ashland that O.D.ed on Oxycontin just days before this sale. She knew that. She knew the girl O.D.ed on Oxycontin. Did that stop her from selling to Kevin Bowling? No. Did that stop her from snorting eleven (11) pills the day before? No. That's why the work of detectives such as Randy Hunter and the Kentucky State Police are so important, be-

cause they are the ones that are out trying to get these drug dealers off the street. That's their job. That's what Detective Hunter did here, and he did it by the book.

. . . .

> The point I want to make is, Ladies and Gentlemen, if we are ever to make a dent in a terrible drug problem we've got, prescription drugs with Oxycontin, it's time to send a message to this defendant and to this community that we're going to punish drug dealers for doing what they're doing. It's time we send a message. You know, I hear it all the time, it's hard not to. It's on t.v., it's in the newspapers, you talk to people on the street in the community. Tell them something needs to be done. Well, what can be done about this problem? Something can be done and something can be done today. Something can be done now.
>
> There's nothing more that I can do or we can do. The case is in your hands, and it's only you that can hold the Defendant accountable for doing what she did, selling Oxycontin. Folks, it's time we take a stand on drugs. It's time we made a stand on prescription pills. It's time we make a stand on Oxycontin. There's one way to do that. Everybody else has done their job. It's time for you to do your job. And you make sure the Defendant is punished for what she did in selling Oxycontin.

At no point during the prosecutor's argument did defense counsel raise an objection. It was not until the jury had begun its deliberations that defense counsel informed the trial court, "I want to go on the record that I didn't think that the proselytizing by [the prosecutor] about the evils of Oxycontin was a proper part of his argument." The trial court responded that it

had instructed the jury not to consider closing arguments as evidence. Further, the trial court noted that jurors are permitted to draw any reasonable inferences and "they can bring their life experiences in with them." The court treated defense counsel's comment as a motion for a mistrial and denied it.

Despite the total lack of preservation in the trial court, the Court of Appeals concluded that the prosecutor's "send a message" argument was improper because it "suggested that the jury had some obligation to cure the community's problems through its verdict and thereby divert[ed] attention from the jury's true function of evaluating whether the evidence presented established Mitchell's guilt." Even so, it did not go so far as to determine whether the argument constituted palpable error affecting Mitchell's substantial rights.

As noted by the lower court, "send a message" closing arguments have, in fact, been prohibited in some jurisdictions. *See Payton v. State,* 785 So.2d 267 (Miss.1999); *State v. Apilando,* 79 Hawai'i 128, 900 P.2d 135 (1995); *Coreas v. United States,* 565 A.2d 594 (D.C.App.1989). *But compare People v. Chavez,* 265 Ill.App.3d 451, 201 Ill.Dec. 880, 637 N.E.2d 469 (1994) and *Bryant v. State,* 249 Ga. 242, 290 S.E.2d 75 (1982). Kentucky courts have not drawn a bright line rule prohibiting such statements, but rather have analogized them to remarks which tend to cajole or coerce a jury to reach a verdict that would meet the public favor, *Jackson v. Commonwealth,* 301 Ky. 562, 192 S.W.2d 480 (1946), or suggestions that a jury convict on grounds not reasonably inferred from the evidence. *Wallen v. Commonwealth,* 657 S.W.2d 232 (Ky.1983). In *Ice v. Commonwealth,* 667 S.W.2d 671 (Ky.1984), *cert. denied,* 469 U.S. 860, 105 S.Ct. 192, 83 L.Ed.2d 125 (1984), however, this Court did hold that a prosecutor's request that the jury make an example of the defendant constituted prosecutorial misconduct.

In this instance, we are of the opinion that no manifest error resulted from the prosecutor's comments because they were made in direct response to defense counsel's closing argument. *See generally Young v. Commonwealth,* 25 S.W.3d 66 (Ky.2000). Mitchell's entire defense was that she had no participation in the drug buy and that Bowling had somehow "set her up." Despite the total innocence theory, defense counsel nonetheless stated:

> And even if you believe that my client sold six (6) little pills that look about like this, don't send her to prison. This is a first-degree offense. You'd have to send her for a long time. Look at her. Does she look like a drug dealer?

Undoubtedly, the Commonwealth believed it necessary to counter defense counsel's entreaty to the jury to acquit Mitchell even if it believed she was, in fact, a drug trafficker, simply because she did not look like the typical drug dealer. This Court has repeatedly held that a prosecutor is permitted wide latitude during closing arguments and is entitled to draw reasonable inferences from the evidence, *Lynem v. Commonwealth,* 565 S.W.2d 141 (Ky.1978), as well as respond to matters raised by the defense. *Hunt v. Commonwealth,* 466 S.W.2d 957 (Ky.1971). Defense counsel's comments trivialized Mitchell's actions and the dangers of Oxycontin. The Commonwealth was well within its bounds to respond.

However, we again caution the Commonwealth that it is not at liberty to place upon the jury the burden of doing what is necessary to protect the community. *King v. Commonwealth,* 253 Ky. 775, 70 S.W.2d 667 (1934); *see also Stasel v. Commonwealth,* 278 S.W.2d 727 (Ky.1955), and *Ice, supra.* While it is the duty of the prosecutor to advance the Common-

wealth's case with persuasiveness and force, he or she has a concomitant duty not to derogate from a fair and impartial criminal proceeding.

Reviewing the Commonwealth's closing argument in its entirety, we characterize the prosecutor's comments as responsive commentary to defense counsel's closing argument. As the trial court noted, the Commonwealth was probably "preaching to the choir." The comments neither prejudiced Mitchell's right to a fair trial, nor unduly pressured the jury to punish her. As such, any error must be deemed harmless. RCr 9.24.

## II. Detective Hunter's Testimony

The Court of Appeals found error in two aspects of Detective Hunter's testimony. First, the court held that testimony concerning the effects of Oxycontin on the human body was "questionably relevant" and improperly introduced. Second, the court opined that Detective Hunter testified to improper KRE 404(b) evidence.

*Effects of Oxycontin*

■ Detective Hunter testified on direct examination that Oxycontin is a synthetic Morphine tablet with a pharmaceutical name of Oxycodone. Detective Hunter stated that the drug is more potent and addictive if the pills are crushed and either snorted or injected. He further noted that an addict would require increasing amounts of the drug to continue to achieve the same level of intoxication.

While we would agree with the Court of Appeals that evidence of the nature of Oxycontin has little, if any, relevance to whether or not Mitchell sold the drug to an undercover informant, we disagree that the substance of Detective Hunter's testimony contained "matters of specialized scientific knowledge." *See* KRE 702. Detective Hunter informed the jury of his specialized training in narcotics police

work, the number of Oxycontin cases he had handled, and the seminar training he had received on Oxycontin. The crux of Detective Hunter's testimony concerned the manner in which users consume Oxycontin, which was within the scope of his training and experience. At no point did he venture into the realm of the true medical effects of the drug. In fact, the trial court summed it up by stating, "This is something that's in the realm of common knowledge of this day and time and it's not offered for expert [sic]."

Defense counsel did not object to the substance of Detective Hunter's testimony, but rather that he was being portrayed as an expert. That Oxycontin is addictive is a known fact. Notwithstanding, this testimony could not have prejudiced Mitchell because it was not relevant to the issue of whether she sold Oxycontin. Thus, we do not conclude that Detective Hunter's testimony warrants reversal of Mitchell's conviction.

*Prior Bad Acts*

The following colloquy took place during the Commonwealth's direct examination of Detective Hunter:

Commonwealth: And how did the Defendant become the subject of this investigation?

Det. Hunter: Upon the initial interview of the informant, he identified several targets that he had conducted transactions with that he had purchased narcotics from. Generally, what I would do is I make a list somewhere in some personal notes and we'll—I'll verify some of the information that he's told me, and then we'll start working from that. Ms. Mitchell over there was identified by the informant. I had received some other complaints.

Defense Counsel: Object.

Trial Court: Overruled.

Det. Hunter: I had received some other complaints, thus verifying the informant's information that he told me, and then we decided to set up a transaction with Ms. Mitchell.

The Court of Appeals not only concluded that the Commonwealth failed to demonstrate that the above testimony fell within an exception to KRE 404(b), but also that the testimony constituted inadmissible investigative hearsay under *Sanborn v. Commonwealth*, 754 S.W.2d 534 (Ky.1988). We disagree.

Interestingly, this case is analogous to the Court of Appeals' decision in *Castle v. Commonwealth*, 44 S.W.3d 790 (Ky.App. 2000). In *Castle*, a detective testified that he had received information from a confidential informant that the defendant was trafficking in marijuana. Although the defendant did not object to the testimony, she later claimed on appeal that the admission of improper investigative hearsay was palpable error. The Court of Appeals relied on this Court's decision in *Gordon v. Commonwealth*, 916 S.W.2d 176, 179 (Ky. 1995), wherein we held:

[I]t was not improper to admit evidence that appellant had become a suspect in the county-wide drug investigation. This avoided any implication that appellant had been unfairly singled out and explained why the police equipped an informant with a recording device and money with which to attempt a drug buy from appellant. The next question, however, was utterly unnecessary and unfairly prejudicial. There was no legitimate need to say or to imply that appellant was a drug dealer or that he was suspected by the police department of selling drugs in a particular vicinity.

Unlike *Castle* (and this case), the error in *Gordon* was adequately preserved. *Gordon, supra,* at 178. Noting this distinction, the Court of Appeals in *Castle*

held that while the detective's testimony constituted improper hearsay, the unpreserved error did not meet the palpable error test under RCr 10.26. "We do not believe the isolated testimony was so persistent and prejudicial to cause a manifest injustice." *Castle, supra,* at 794.

Similarly, given the ambiguous nature of defense counsel's objection, this issue is not adequately preserved for review. Nor do we find Detective Hunter's comments as egregious as those made in either *Castle* or *Gordon*. Detective Hunter gave no explanation of the "complaints" that he had received pertaining to Mitchell. Further, his isolated reference to the informant having identified targets he had previously conducted transactions with was not descriptive enough to fall within the guise of KRE 404(b) and be construed as a prior bad act on the part of Mitchell. We simply cannot conclude that this testimony was so prejudicial as to constitute a manifest injustice. Upon consideration of the case as a whole, we do not find that a substantial possibility exists that the result would have been any different.

### III. Cumulative Error

Not only do we fail to perceive that any one error warrants reversal of Mitchell's conviction, but we do not conclude that their cumulative effect denied Mitchell a fair trial. *Cf. Funk v. Commonwealth*, 842 S.W.2d 476 (Ky.1992). None of the errors discussed by the Court of Appeals, taken alone or considered together, resulted in manifest injustice that affected Mitchell's substantial rights or entitles her to a new trial.

Accordingly, we reverse the decision of the Court of Appeals and reinstate the judgment and sentence of the Floyd Circuit Court.

LAMBERT, C.J.; COOPER, GRAVES, JOHNSTONE, SCOTT, and WINTERSHEIMER, JJ., sitting.

All concur.