# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 24, 2007
NOT TO BE PUBLISHED

Supreme Court of Kentucky FINAL

2005-SC-000954-MR DATE 6-14-07 Ellia Brown, D.C.

DAVID MCKEE                                                                 APPELLANT

V.

APPEAL FROM BREATHITT CIRCUIT COURT
HON. LARRY MILLER, JUDGE
NO. 05-CR-00043

COMMONWEALTH OF KENTUCKY                                          APPELLEE

### MEMORANDUM OPINION OF THE COURT

### Affirming

This is a matter of right appeal from a judgment in which appellant was convicted of Wanton Murder, Fourth-Degree Assault, and Operating a Vehicle Under the Influence of Alcohol for crashing his car head-on into another car while drunk. Appellant argues that the trial court erred in allowing the prosecutor to misstate certain key evidence in his closing argument and that a potential juror was improperly dismissed for cause. We reject both allegations of error and thus affirm.

On December 17, 2004, Anthony and Michelle Wenrick, along with Michelle Wenrick's daughter, Shephanie Moore, traveled from Nicholasville to Jackson to visit Michelle's brother who was in the hospital. Upon leaving the

hospital that evening, the Wenricks decided to visit Michelle's mother in Morgan County. The Wenricks allowed Stephanie to ride in a minivan with Michelle's two nieces and decided to follow the van because her nieces claimed to know the way. After traveling along Kentucky 30 for some distance, Michelle's niece pulled over and told the Wenricks that she was lost. The Wenricks had a map so they decided to take the lead with the van following behind them. The Wenricks began traveling when Anthony, who was driving, spotted an oncoming vehicle about a 100 yards away in their lane without its headlights on. Anthony testified that both cars were traveling approximately 50 mph and that the oncoming vehicle was traveling nearly in the shoulder of his lane. Anthony attempted to avoid the car and veer left, but the two vehicles collided head-on. The Wenrick's Toyota went airborne, flipped and ultimately came to rest on its hood. Anthony and Michelle were removed from the vehicle with the jaws of life and taken to the Kentucky River Medical Center in Jackson. Anthony suffered minor injuries. Michelle was flown to University of Kentucky Medical Center where she later died of her injuries.

Sergeant Elvis Noble of the Jackson Police Department responded to the accident at approximately 7:38 p.m. When Noble arrived on the scene, he observed a male and a female conversing with each other in an overturned Toyota. Sergeant Noble testified that he did not request that the state police perform an accident reconstruction because he did not believe it to be a fatal accident at the time. While the EMS and the fire department were working to get the Wenricks out of their vehicle, Sergeant Noble approached the other vehicle.

Upon establishing that the driver, David McKee, was not injured, Sergeant Noble asked McKee to perform a field sobriety test. McKee failed the test, so he was arrested. Sergeant Noble thereupon took McKee to the hospital to have a blood sample taken. McKee's blood alcohol level was determined to be 0.18 grams per 100 milliliter.

McKee was indicted on charges of Wanton Murder, Fourth-Degree Assault, and Operating a Vehicle Under the Influence of Alcohol. A jury trial was held on October 12-13, 2005. The defense offered no evidence at trial. McKee was found guilty on all counts. Thereafter, McKee agreed to a sentence of twenty (20) years and was ultimately sentenced in accordance with this agreement. This appeal followed.

McKee's first argument is that the trial court erred in allowing the prosecution during its closing argument to misstate evidence from the hospital medical records indicating that Anthony Wenrick was intoxicated on the night of the wreck. Upon the Commonwealth's motion, the Wenricks' hospital records were admitted into evidence at trial. In two places in Anthony's records there is a notation of "acute alcohol intoxication". In another place in Anthony's records it states, "Blood alcohol level was 0.4." And a chemical analysis report for Anthony from the hospital's lab shows a reading of "ALC 0.4H – 0 mg/d".

During defense counsel's cross-examination of witness Brent Benning, the Kentucky State Police crime lab toxicology chemist who conducted the blood alcohol analysis on McKee's blood sample, it was elicited that grams per 100 milliliter was the universal standard which state forensic labs use to

measure blood alcohol levels. On redirect, the Commonwealth asked Benning if he knew whether that was the standard that hospitals use to measure blood alcohol levels. Benning replied that the only other standard he had seen used by hospitals was milligrams per deciliter, which could easily be converted to grams per 100 milliliter by dividing the number by 1000.

During McKee's closing argument, defense counsel maintained that Anthony Wenrick was also driving while intoxicated and could have just as likely been the cause of the wreck. In attempting to refute this theory of the case, the prosecutor in his closing argument pointed out that some of Anthony's hospital records contained an incorrect social security number and also alleged that the hospital likely used the milligrams per deciliter standard to measure Anthony's blood alcohol level. The prosecutor then noted that converting the 0.4 milligrams per deciliter blood alcohol level to a grams per 100 milliliter blood alcohol level would result in a 0.004 level, which would be negligible. At this point, defense counsel objected and a bench conference ensued.

McKee's counsel argued that this was a misstatement of the evidence because there was no evidence as to how the hospital had in fact calculated Anthony's blood alcohol level and that the prosecution should not be able to do the mathematical conversion for the jury. The prosecutor responded that his assertion was a reasonable inference from the testimony of Brent Benning that hospitals sometimes use the milligrams per deciliter standard to measure blood alcohol levels. The trial court overruled McKee's objection and denied his motion for a mistrial, but instructed the Commonwealth to tell the jury

-4-

that they could do their own conversion. The Commonwealth agreed and told the jury that they were free to do their own conversion.

McKee argues that the trial court erred in allowing the Commonwealth to speculate in its closing argument about how the Kentucky River Medical Center measured Anthony's blood alcohol level when there was absolutely no evidence in the record about which standard the hospital used to measure Anthony's blood alcohol level. It is McKee's position that this misstatement of the evidence was prejudicial in this case because the evidence of Anthony Wenrick's intoxication was central to the issue of causation of the wreck and the defense theory that Anthony was also driving while intoxicated and could have been the cause of the wreck.

"It is a well settled principle that matters pertaining to closing arguments lie within the discretion of the trial court." Hawkins v. Rosenbloom, 17 S.W.3d 116, 120 (Ky.App. 1999). Prosecutors are permitted wide latitude during closing arguments and are entitled to draw all reasonable inferences from the evidence to support any explanation of the evidence that supports a finding of guilt, as well as respond to matters raised by the defense. Commonwealth v. Mitchell, 165 S.W.3d 129, 132 (Ky. 2005) (citing Lynem v. Commonwealth, 565 S.W.2d 141 (Ky. 1978) and Hunt v. Commonwealth, 466 S.W.2d 957 (Ky. 1971)); Tamme v. Commonwealth, 973 S.W.2d 13, 39 (Ky. 1998). "However, they may not argue facts that are not in evidence or reasonably inferable from the evidence." Garrett v. Commonwealth, 48 S.W.3d 6, 16 (Ky. 2001).

In the case sub judice, the prosecutor's assertion that Anthony Wenrick's blood alcohol level was likely computed using the milligrams per deciliter standard was in direct response to the defense theory that Anthony Wenrick was intoxicated and was the cause of the accident. We believe the assertion was a reasonable inference from the hospital records and Brent Benning's testimony that the hospitals sometimes use that standard. The hospital's chemical analysis report showing a reading of "ALC 0.4H – 0 mg/d" indicates that the hospital may have, in fact, used the milligrams per deciliter standard. And when viewed in light of the following evidence that Anthony was not intoxicated, the assertion was corroborated by other evidence in the record: the testimony of Officer Miller, who interviewed Anthony at the hospital after the wreck, that Anthony did not appear to be under the influence of alcohol; notations in the hospital records that Anthony was alert, oriented, cooperative, and his pupils were normal; and Anthony's testimony that he had not consumed any alcohol on the night of the wreck. Accordingly, the trial court did not abuse its discretion in allowing the prosecutor's statements regarding how the hospital may have computed Anthony's blood alcohol level.

McKee next argues that the trial court erred when it improperly excused a juror for cause. The juror in question, David Saint, revealed during voir dire that defense counsel had represented his father three years ago when he was being prosecuted in Breathitt County (the same county as the case at bar) for killing someone while driving his automobile in an intoxicated state. Mr. Saint recalled accompanying his father to conferences at defense counsel's

-6-

office. Mr. Saint stated that he was satisfied with defense counsel's representation of his father and that he would hire counsel to represent him if he ever found himself in a similar situation. Although Saint stated that his father's case would have no bearing on his decision in the present case, when asked if he would be able to fairly consider the evidence without any bias against the Commonwealth, Mr. Saint replied, "I won't know til I get there." The Commonwealth moved to strike Mr. Saint for cause, arguing that he could not be impartial due to his father's similar charges and the fact that defense counsel had represented his father.

A determination whether to excuse a juror for cause lies within the sound discretion of the trial court and is reviewed only for a clear abuse of discretion. Soto v. Commonwealth, 139 S.W.3d 827 (Ky. 2004), cert. denied, 544 U.S. 931, 125 S. Ct. 1670, 161 L. Ed. 2d 495 (2005). "The question of jury bias is decided by examining whether the challenged juror can be impartial in light of the particular facts and circumstances connecting the juror to the case to be tried." Rodriguez v. Commonwealth, 107 S.W.3d 215, 221 (Ky. 2003). "Bias is implied from any close relationship, familial, financial or situational, with any party, counsel, victim, or witness, which, though not so close as to cause automatic disqualification, nevertheless transgresses the concept of a fair and impartial jury." Sholler v. Commonwealth, 969 S.W.2d 706, 709 (Ky. 1998) (citation omitted).

McKee contends that because Mr. Saint was never himself a former client of defense counsel, it was error for the court to strike him for cause.

We disagree. On the contrary, given the fact that Mr. Saint's father was tried for the same crime three years earlier, was represented by the same defense counsel, that Mr. Saint was satisfied enough with his performance that he would hire him in a similar situation, and, foremost, Mr. Saint's admitted uncertainty on whether he could be impartial, we believe the court would have abused its discretion had it <u>not</u> stricken Mr. Saint for cause.

The judgment of the Breathitt Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Randall L. Wheeler
Assistant Public Advocate
100 Fair Oaks Lane, Suite 302
Frankfort, KY 40601


COUNSEL FOR APELLEE:

Gregory D. Stumbo
Attorney General
Room 118, Capitol Building
Frankfort, KY 40601

David W. Barr
Assistant Attorney General
Office Of Attorney General
Office Of Criminal Appeals
1024 Capital Center Drive
Frankfort, KY 40601-8204