RENDERED:  NOVEMBER 15, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-1223-MR

DONTRELL MCGEE                                                            APPELLANT

v.
APPEAL FROM KENTON CIRCUIT COURT
HONORABLE PATRICIA M. SUMME, JUDGE
ACTION NO. 23-CR-00377

COMMONWEALTH OF KENTUCKY                                    APPELLEE

OPINION
AFFIRMING

** ** ** ** **

BEFORE:  CALDWELL, CETRULO, AND A. JONES, JUDGES.

CETRULO, JUDGE:  Appellant Dontrell McGee ("McGee") appeals his sentence due to allegedly improper comments from the prosecutor during the penalty phase of his trial.  After review, we affirm.

## BACKGROUND

Police stopped McGee and his paramour while they were walking in Covington, Kentucky, because they were in close proximity to a disturbance call

and matched the description of the persons of interest at the disturbance. While police were speaking with the couple, they discovered an outstanding warrant for McGee's arrest. After police handcuffed McGee, he began repeatedly asking if his paramour could take his possessions, but police refused. Police removed McGee's small red bag from across his chest and discovered a handgun, an extended magazine, gloves, and a ski mask inside. Police charged McGee with being a convicted felon in possession of a handgun.

In August 2023, the Kenton Circuit Court held a one-day trial. Prior to trial, McGee stipulated to his prior felony conviction. During trial, two Covington police officers testified that McGee was wearing the red bag when they first saw him that night; the red bag stayed on his person throughout the conversation; and at no time did McGee disavow ownership of the bag or its contents. The Commonwealth played police bodycam footage from the night of the arrest showing McGee wearing the bag, police opening the bag, and finding a handgun inside. McGee did not testify in this stage of the trial, and the jury found him guilty of being a felon in possession of handgun, a class C felony.

In his opening statement of the penalty phase, the prosecutor informed the jury he was going to call a probation and parole officer ("P&P Officer") to testify about parole eligibility and possible statutory reductions for these types of non-violent convictions. The prosecutor stated:

Class C felonies carry a punishment range . . . of five to 10 years in prison.  However, [the P&P Officer is] also gonna tell you in Kentucky the sentences imposed aren't what they seem because the Kentucky Legislature has some funny math when it comes to sentencing convicted felons.  They call this portion of the trial truth-in-sentencing.  The reason it's called truth-in-sentencing is because there is really no truth to the sentence.  You're gonna hear that possession of a handgun by a convicted felon is a nonviolent felony for parole purposes.  That means that no matter what sentence this jury imposes this defendant will be eligible to be released from prison after serving just 20% of whatever sentence is imposed.

. . .

Parole is actually decided by the parole board.  We're gonna talk a little bit about parole eligibility, what it means, what factors the parole board considers when they decide whether or not to release someone early.  But if parole isn't scary or offensive enough as it is when it comes to a sentence, what is really offensive is good time credits.  [The P&P Officer] is going to tell you that good time is time that comes off the back of an offender's sentence.  In other words, it shortens the sentence that this jury imposes. . . .  The official terms are statutory, meritorious, educational, and work for time credit.  Basically, you're gonna hear is that statutory is time that they get more or less for not escaping prison.  They get meritorious . . . more or less for the same thing; they get it automatically.  It can be taken away by the warden if they misbehave, but as long as they behave themselves behind bars they get this credit.  The statutory is 10 days for every calendar month, the meritorious is seven days for every calendar month.  That means that for every month that he doesn't escape prison it shortens his sentence by 17 days.  That, quite frankly, starts to add up pretty quickly.  Then you factor in educational good time credits . . . they get their GED [General Educational Development] it is 90 days or three months off their sentence.  If they take a drug

treatment class it's 90 days off their sentence. . . . There is no cap on the number of 90-day reductions they can get in their sentence. Frankly I went to law school in the hopes that I would never have to do math again but yet here I am. But if you just figure out the statutory and meritorious good time alone . . . if you just go off the 17 days alone for not escaping, a serve out is barely more than 50% of his sentence. A serve out is when they're done, they're released. . . . That's the reality of felony offenses in Kentucky. . . . You can almost chop the sentence that this jury imposes in half if Mr. McGee behaves himself in prison.

Thereafter, the Commonwealth called the P&P Officer to testify. The P&P Officer testified McGee had a prior felony conviction for theft in Indiana. Also, the P&P Officer testified McGee was facing a five to 10-year sentence, would be eligible for parole after serving 20%, but that parole was "not guaranteed." He explained that when an inmate reaches parole eligibility, a parole board has the power to grant or deny parole. The P&P Officer explained that inmates qualify for four types of "good time" credit while incarcerated, and these credits reduce his/her overall sentence. By way of example, the P&P Officer stated McGee will be eligible to receive 10 days of statutory good time credit per calendar month, seven days of meritorious credit per calendar month, 90 days of credit for any educational course he completes while incarcerated (such as a GED course), and one day work credit for every 40 hours of work completed while incarcerated.

On cross-examination from defense counsel, the P&P Officer agreed the statute controlling these good time credits states that an inmate "may" receive these credits. The P&P Officer stated good time credits are awarded to inmates *unless* behavior or conduct prevents it, and these awards are "not automatic." The P&P Officer stated the credits do not have to be given; they are discretionary awards. Also, the P&P Officer testified the credits "could be taken away" after being received as a punishment for poor conduct.

During redirect, the prosecutor asked the P&P Officer, "Regardless of what the statute says the Department of Corrections *may* do, in reality, in practice do they give 10 days to any inmate who does not escape?" The P&P Officer answered in the affirmative. The Commonwealth asked, "Do they give seven days to every inmate who does not [mis]behave?" Again, the P&P Officer answered in the affirmative. The Commonwealth then stated:

> So they don't just willy-nilly go, "I think I'm gonna give you three days this month, and you get five days this month, and you only get a day, but this guy over here, he gets seven days." Everybody who behaves themselves gets their seven days. Correct?

Again, the P&P Officer answered in the affirmative and shortly thereafter the court excused him. Next, although McGee did not testify during the guilt/innocence phase of his trial, he testified during the sentencing phase. On direct, McGee testified he was a young father without a high school diploma or

GED, but he did not discuss the details of his arrest or the events leading up to his arrest. However, the prosecutor then asked him about the day he was arrested.

On cross-examination, the prosecutor asked McGee if the red bag was his. At first McGee declined to answer, but after an objection and brief arguments, the court instructed McGee to answer. McGee said he found the red bag immediately before police stopped him, and he put the bag on without ever looking inside. The prosecutor noted the weight of the bag – due to the heavy handgun inside – but McGee insisted he never looked in the bag.

During his closing statement of this phase, the prosecutor stated,

> They call it truth-in-sentencing for a reason because there is no truth in Kentucky sentencing. It's the most frustrating thing about being a prosecutor. If five years actually meant five years in the Commonwealth of Kentucky, then maybe I would agree with [defense counsel] that this [charge] isn't the worst [crime]. But then you start figuring in all this math and five years doesn't come close to being five years, and I'm not even talking about parole eligibility. . . . [After applying credits] a five-year sentence is all the way down to two years.

Also, the prosecutor argued McGee's lack of remorse and honesty (in his testimony) made him a threat to the community and requested the maximum 10-year sentence. (McGee asked for the minimum five-year sentence.) The jury sentenced McGee to seven years and six months of incarceration. McGee appealed.

## STANDARD OF REVIEW

On appeal, McGee admits he did not preserve his arguments and requests we review for palpable error pursuant to Kentucky Rule of Criminal Procedure ("RCr") 10.26. RCr 10.26 states that an appellate court may review unpreserved arguments for "palpable error which affects the substantial rights of a party" and may grant appropriate relief "upon a determination that manifest injustice has resulted from the error." When we engage in palpable error review, our "focus is on what happened and whether the defect is so manifest, fundamental and unambiguous that it threatens the integrity of the judicial process." *Martin v. Commonwealth*, 207 S.W.3d 1, 5 (Ky. 2006).

## ANALYSIS

Kentucky Revised Statute ("KRS") 532.055 is Kentucky's truth-in-sentencing statute, and it is "designed to provide the jury with information relevant to arriving at an appropriate sentence for a particular offense." *Furnish v. Commonwealth*, 267 S.W.3d 656, 661 (Ky. 2007) (citing *Williams v. Commonwealth*, 810 S.W.2d 511, 513 (Ky. 1991)). KRS 532.055, in relevant part, lists the types of evidence that may be offered by the Commonwealth relevant to sentencing including, but not limited to, parole eligibility, any prior conviction, and "[t]he maximum expiration of [the] sentence as determined by the division of probation and parole for all such current and prior offenses[.]" KRS

532.055(2)(a)4. KRS 197.045 describes the various kinds of credits inmates may receive while incarcerated as explained by the P&P Officer (plus additional credit possibilities the officer did not mention).

On appeal, McGee takes umbrage with the prosecutor stating the standard practice within the prison system is to award meritorious credit "automatically," *i.e.*, *by default* as long as the inmate does not misbehave. McGee argues this statement is misleading because, by statute, meritorious credits are awarded "only upon an affirmative decision and action by the Commissioner." However, McGee's argument and the prosecutor's words are *not* inherently inconsistent. The prosecutor implied at trial that Kentucky prisons have made the decision to award meritorious credits as the standard course of business but may block and/or rescind that award if the inmate does not behave accordingly. The prosecutor did say the credits were "automatic," but then immediately relayed that the credits "can be taken away by the warden if they misbehave." We do not find this to be contrary to either KRS 532.055 or KRS 197.045.

Next, McGee argues the prosecutor's statements – his opinion that there is no truth in Kentucky sentencing and his disagreement with the number of credits permitted by law – were so prejudicial as to rise to a level of prosecutorial misconduct. Since there was no contemporaneous objection, we must find the statements to be *flagrant* misconduct in order to reverse on this claim. *See*

*Brafman v. Commonwealth*, 612 S.W.3d 850, 861 (Ky. 2020). Misconduct is *flagrant* if it rendered the trial "fundamentally unfair." *Id*. (quoting *Dickerson v. Commonwealth*, 485 S.W.3d 310, 329 (Ky. 2016)). To determine if the conduct was sufficiently flagrant, we consider if the statements were intended to mislead the jury or prejudice McGee; whether they were isolated or extensive; whether they were deliberately placed in front of the jury; and the strength of the evidence against McGee. *See id*. (citations omitted).

As stated above, the prosecutor did not misstate the law, and there is no indication he intended to mislead the jury. True, the prosecutor gave his opinion of the current state of the Kentucky sentencing guidelines, but he presented it as just that, his opinion. Simply, he stated the law correctly and then said he did not like it. McGee does not cite any precedent that would lead us to believe that the prosecutor's statements reached the requisite level of prejudice in order to be considered flagrant. Also, the prosecutor's statements had little possibility of being misinterpreted because they were so close in time to the P&P Officer's clear, accurate testimony. The P&P Officer testified that credits were discretionary and "not automatic," but were customarily given if the prison had no reason not to grant the credits.

Moreover, the prosecutor's personal opinions of credits could not reasonably be said to have outweighed the strength of the evidence against McGee.

Prior to trial, McGee stipulated he was a convicted felon. At trial, two police officers testified that on the night of his arrest, McGee was wearing a red bag across his chest when they first saw him, and it remained on his person until police removed it. Police bodycam footage showed McGee wearing the red bag and police finding a handgun in the red bag. McGee talked almost constantly during the police stop and yet, after police found the gun, McGee did not once disavow ownership of the red bag or its contents. It was only *after* the guilt/innocence phase of his trial was completed that McGee presented an argument that the red bag and handgun were not his. On the stand, McGee did not show contrition and presented a somewhat implausible story about finding the bag immediately prior to the police stop and putting it on without looking inside. Despite this, the jury did not give McGee the maximum sentence, but rather split the requests down the middle; the Commonwealth asked for the maximum ten years of incarceration and the defense requested the minimum of five years. The jury recommended a sentence of seven years and six months. As such, McGee did not meet his burden of establishing the prosecutor's comments were sufficiently misleading nor outweighed the strength of the evidence to qualify as flagrant. Further, error cannot be presumed "simply from the fact that the jury recommended severe punishment" for McGee "in light of the overwhelming evidence produced by the

-10-

Commonwealth." *See Brewer v. Commonwealth*, 206 S.W.3d 343, 350-51 (Ky. 2006) (citation omitted).

In Kentucky, counsel has "wide latitude while making opening or closing statements." *Brewer*, 206 S.W.3d at 350 (citation omitted). This latitude has been tested, but the bar remains high within palpable error review. For instance, in *Brewer*, *supra*, a prosecutor asked the jury to "send a message" to the community by recommending a severe prison sentence. *Id*. at 349. Our Supreme Court found those statements to be improper, but stated they do not rise to the level of palpable error in light of the overwhelming evidence and binding precedent. *Id*. at 350-51 (citing *Young v. Commonwealth*, 50 S.W.3d 148 (Ky. 2001) and *Commonwealth v. Mitchell*, 165 S.W.3d 129 (Ky. 2005)). Additionally, McGee's counsel asked for mercy and leniency in her closing argument, based in part, on McGee's age and his status as an involved father to two small children. Thus, the prosecutor had the right to respond by asserting McGee's lack of contrition and honesty were cause for concern and warranted a high degree of punishment. *See id.* (citation omitted). As such, we find no palpable error that affected McGee's substantial rights. *See* RCr 10.26.

## CONCLUSION

Therefore, we AFFIRM the Kenton Circuit Court Order accepting the jury's recommendation of seven years and six months of imprisonment.

ALL CONCUR.


BRIEFS FOR APPELLANT:

Adam Meyer
Frankfort, Kentucky

BRIEF FOR APPELLEE:

Russell Coleman
Attorney General of Kentucky

Ken W. Riggs
Assistant Attorney General
Frankfort, Kentucky